UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

TRAMETRICH DEMOND JOHNSON,

    Plaintiff,

v.                                            Case No. 5:24-cv-174-MCR-MJF

CENTURION OF FLORIDA LLC,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Trametrich Johnson, a Florida prisoner proceeding *pro se* and *in forma pauperis*, has filed a second amended civil rights complaint and supporting memorandum. Docs. 10, 11. The undersigned recommends that this case be dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b), because Johnson's complaint fails to state a claim on which relief can be granted.

**I. J**OHNSON'S **S**ECOND **A**MENDED **C**OMPLAINT

Johnson is an inmate of the Florida Department of Corrections ("FDC") currently housed at the Calhoun Correctional Institution. Doc. 10. Johnson's second amended complaint names one Defendant:

Centurion of Florida, LLC—the healthcare company that contracts with the FDC to provide medical care to prisoners. *Id*.

Johnson alleges that on April 13, 2022, a Centurion employee (APRN Marcelle Frehn) reviewed the results of Johnson's sleep study and determined that he had sleep apnea. Doc. 10 ¶ 5. For treatment, Frehn recommended "weight loss, PAP therapy, and mandibular advancement splints." *Id*. On April 14, 2022, Frehn's supervisor, Dr. Perez, approved Frehn's treatment recommendation. *Id*. ¶ 6. Frehn placed an order for a C-PAP machine, and on April 20, 2022, noted in Johnson's medical file: "awaiting C-PAP delivery." *Id*. ¶ 8.

During a later visit with Johnson in April 2022, Frehn referred Johnson to "psych-counseling" for "depression/anxiety" after Johnson complained of constant fear that he would die in his sleep from not breathing. *Id*. ¶ 9. On April 29, 2022, Frehn noted in Johnson's medical file: "Patient came to f/u visit with HCT 2 tabs, claiming they make him dizzy and he refuses to take them. BP was 144/93. IMP agrees to start Lisinopril 20 mg." *Id*. ¶ 10.

On August 22, 2022, Frehn met with Johnson during a Chronic Illness Clinic visit. *Id*. ¶ 11. Johnson asked Frehn when he would receive

the C-PAP machine, to which Frehn responded, "I would have to check on it and I'll get back to you." *Id.*

On March 18, 2023, Johnson filed a formal grievance complaining that he had not received the C-PAP machine. *Id.* ¶ 12. On March 24, 2023, Dr. Perez approved the grievance, noting: "Medical staff were contacted and they stated that they have received your grievance and your C-PAP machine has been ordered. Once your C-PAP machine has come in you will be placed on the callout system." *Id.* Johnson received the C-PAP machine one month later, on April 25, 2023. *Id.* ¶ 13. The C-PAP machine was delayed due to a medical supply issue. *Id.* ¶ 15; *see also* Doc. 11 at 3.

Johnson claims that the delay in receiving a C-PAP machine violated his rights under the Eighth Amendment. Doc. 10 at 10. Johnson seeks to hold Centurion liable for over $3 million in damages under a *Monell* theory of liability Doc. 10 at 10 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)); *see also* Doc. 11 at 4-5 (Mem.). To support this theory, Johnson alleges that Frehn made an "unconstitutional decision" to "rely solely upon a particular medical supply ordering system to obtain a C-PAP machine," and that Perez, her supervisor, approved

Page 3 of 16

the decision by not "interven[ing] with any alternatives or methods for obtaining a machine." Doc. 10 ¶¶ 4, 15.

## II. SCREENING UNDER 28 U.S.C. §§ 1915(e)(2) AND 1915A

Because Johnson is a prisoner and is proceeding *in forma pauperis*, the District Court is required to review his second amended complaint, identify cognizable claims and dismiss the complaint, or any portion thereof, if the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)-(b); *see also* 28 U.S.C. § 1915(e)(2)(B) (comparable screening provision of *in forma pauperis* statute).

To prevent dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The mere possibility that the defendant

acted unlawfully is insufficient. *Iqbal*, 556 U.S. at 678. The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," that is, "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

In applying the foregoing standard, the court accepts all well-pleaded factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). Mere "labels and conclusions," however, are not accepted as true. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Similarly, a pleading that offers "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### III. SECTION 1983 STANDARD FOR LIABILITY AGAINST CENTURION

"A section 1983 claim is conditioned on two essential elements: first, the conduct complained of must have been committed by a person acting under color of state law; second, this conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or the laws of the United States." *Whitehorn v. Harrelson*, 758 F.2d 1416, 1419 (11th Cir. 1985) (citing 42 U.S.C. § 1983).

An employing entity like Centurion cannot be held liable under § 1983 for an employee's actions based on vicarious liability or *respondeat superior*. *Monell*, 436 U.S. at 694 (an employing entity—there a city—"may not be sued under § 1983 for an injury inflicted solely by its employee or agents.").

Instead, to impose liability on Centurion under § 1983, Johnson must show that (1) his Eighth-Amendment right was violated; (2) Centurion had a custom or policy that constituted deliberate indifference to that right; and (3) the custom or policy caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *Monell*, 436 U.S. at 694; *Buckner v. Toro*, 116 F.3d 450, 452-53 (11th Cir. 1997) (the *Monell* policy-or-custom requirement applies to entities performing traditional state functions); *see also, e.g., Smith v. Salter*, 794 F. App'x 817, 821 (11th Cir. 2019) ("To prevail on a § 1983 claim against a company that has contracted to provide medical care to prisoners, [the prisoner/plaintiff] must establish that his injury was the result of a policy or custom.").

"A policy is a decision that is officially adopted by [Centurion], or created by an official of such rank that he or she could be said to be

acting on behalf of [Centurion]." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) (quotation marks and citation omitted); *see also id.* ("Only those officials who have final policymaking authority may render the municipality liable under § 1983."). "A custom is a practice that is so settled and permanent that it takes on the force of law." *Id.*

## IV. DISCUSSION

Johnson's allegations do not satisfy any of the elements of a *Monell* claim.

### A. Johnson Does Not Plausibly Allege a Violation of His Eighth-Amendment Rights

An Eighth-Amendment medical deliberate-indifference claim requires a plaintiff to allege:

1. the plaintiff had a serious medical need;

2. the defendant was deliberately indifferent to the plaintiff's serious medical need;

3. the plaintiff suffered an injury; and

4. the defendant's deliberate indifference caused the plaintiff's injury.

*See Roy v. Ivy*, 53 F.4th 1338, 1346-47 (11th Cir. 2022); *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007).

To satisfy the deliberate-indifference element, the plaintiff "must show that the defendant acted with 'subjective recklessness as used in the criminal law.'" *Wade v. McDade*, 106 F. 4th 1251, 1253 (11th Cir. 2024) (quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)). "[T]he plaintiff must demonstrate that the defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm." *Wade*, 106 F. 4th at 1253. There remains the caveat, though, that "even if the defendant actually knew of a substantial risk to inmate health or safety, he cannot be found liable under the Cruel and Unusual Punishments Clause if he responded reasonably to that risk." *Wade*, 106 F. 4th at 1253 (alteration adopted) (internal quotation marks and citation omitted).

Johnson's allegations fail to raise of reasonable inference of deliberate indifference. Johnson alleges that Frehn promptly ordered a C-PAP machine, and that she continued to monitor and treat Johnson's medical conditions—including checking the status of the C-PAP machine—in the interim. Doc. 10 ¶¶ 8-11. Johnson's criticism that Frehn "rel[ied] solely upon a particular medical supply ordering system to obtain a C-PAP machine," Doc. 10 ¶ 15, falls far short of showing

deliberate indifference. *See Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013) (distinguishing deliberate indifference from negligence); *Hutchinson v. Wexford Health Servs., Inc.*, 638 F. App'x 930, 933 (11th Cir. 2016) (dismissing deliberate indifference claim because prisoner's allegations did not "demonstrate[ ] that the medical personnel's conduct amounted to anything more than negligence").

Because Johnson has not alleged a plausible claim that an Eighth-Amendment violation was committed, he fails to state a § 1983 claim against Centurion.

## B. Johnson Does Not Plausibly Allege that Centurion Had a Policy that Amounted to Deliberate Indifference

Johnson does not identify an official Centurion policy that caused the C-PAP machine delay. He makes a conclusory assertion that Centurion's failure to "establish obligation(s) or protocol between Dr. Perez and APRN Marcelle Frehn with respect to the purposed [sic] course of sleep apnea treatment" shows deliberate indifference. Doc. 10 ¶ 16. Johnson, though, does not take issue with Frehn and Perez's proposed course of treatment—the C-PAP machine. To the contrary, Johnson claims that that particular treatment was necessary and constitutionally mandated.

What Johnson takes issue with is "Frehn's decision to rely solely upon a particular medical supply ordering system to obtain a C-PAP machine." Doc. 10 ¶ 15. Johnson fails to explain, though, how the "ordering system"—or Frehn's reliance on it—shows deliberate indifference. This vague, conclusory allegation is insufficient to state a claim for liability under *Monell*. *Twombly*, 550 U.S. at 555.

Johnson alternatively argues that the *Monell* requirements are satisfied under a final-policymaker theory. Specifically, Johnson alleges that Dr. Perez was Frehn's supervisor "who did not intervene with any alternatives or methods for obtaining a machine." Doc. 10 ¶¶ 4, 15, 16. Johnson concludes that Perez was a final policymaker who adopted Frehn's allegedly unconstitutional decision. Doc. 10 at 10; Doc. 11 at 4-5.

"The final policymaker theory of liability provides a method for establishing [an entity's] liability where an individual vested with ultimate, non-reviewable decision-making authority for the challenged action or policy has approved or implemented the unconstitutional action at issue." *Baker v. City of Atlanta*, 662 F. Supp. 3d 1308, 1320 (N.D. Ga. 2023) (quoting *Williams v. Fulton Cnty. Sch. Dist.*, 181 F.

Supp. 3d 1089, 1124 (N.D. Ga. 2016) (citing *Scala v. Winter Park*, 116 F.3d 1396, 1398-1403 (11th Cir. 1997))). Johnson's allegations fail to satisfy this standard for several reasons.

First, the fact that Perez was Frehn's supervisor, or that he approved C-PAP treatment, does not support Johnson's conclusion that Perez or Frehn was a final policymaker that approved an unconstitutional delay in the C-PAP machine. The Eleventh Circuit long has distinguished between a "decisionmaker," and a "policymaker." *See Kamensky v. Dean*, 148 F. App'x 878, 880-81 (11th Cir. 2005) (discussing Circuit precedent) (distinguishing *Holloman ex. rel. Holloman v. Harland*, 370 F.3d 1252 (11th Cir. 2004)).

In a recent unreported decision, the Eleventh Circuit explained why an argument like Johnson's fails to plead a facially plausible *Monell* claim. *See Hernandez v. GEO Group*, No. 23-13654, 2024 WL 3963947 (11th Cir. Aug. 28, 2024):

> Hernandez's amended complaint failed to include any facts alleging that his providers functioned as final policymakers. The fact that the medical staff had discretion to make medical decisions does not mean that Wellpath and Centurion had delegated final policymaking authority to them. Even if the employees were not required to consult with a superior before making medical decisions, Hernandez's cursory allegations failed to establish that they had

> unfettered discretion, especially on matters of policy. *See Praprotnik*, 485 U.S. at 128. Nor does Hernandez identify any specific policy created by the staff that caused his medical complaints. Hernandez cannot state a section 1983 claim by reciting a legal conclusion that the employees were delegated final policymakers. *See Iqbal*, 556 U.S. at 678 (explaining that a "formulaic recitation of the elements of a cause of action will not do"). Because "[m]unicpal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered," Hernandez failed to state section 1983 claims against Wellpath and Centurion. *Pembaur*, 475 U.S. at 481.

*Id.* at *5 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988), and *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).

Second, even if Johnson alleged sufficient facts to show that Perez was a final policymaker, Johnson's own allegations demonstrate that Perez did not know of the delay *prior to Johnson filing his grievance in March 2023.* It would be illogical to infer that Perez approved or acquiesced in a delay he was unaware of.[1]

Perez's lack of notice (until Johnson filed a grievance) also dooms Johnson's argument that Centurion failed to have a sufficiently specific policy regarding physician supervision of medical staff. *See* Doc. 10 ¶ 16. Johnson does not allege that a final policymaker was on notice of the

---

[1] Remember, Johnson's claim is confined to *a single incident* involving *only his own care.*

deficiency, and he discusses only the single incident involving his C-PAP machine. See *Knight through Kerr v. Miami-Dade County*, 856 F.3d 795, 820 (11th Cir. 2017) (granting summary judgment to county on *Monell* claim grounded in supervising officers' failure to supervise subordinate officers; plaintiff offered no evidence that supervising officers had notice of a need to improve supervision of subordinates); *Sorensen v. Nocco*, 677 F. App'x 570, 572-73 (11th Cir. 2017) (dismissing *Monell* claim against county because (1) detainee did not allege that final policymaker was on notice of lack of policies regarding medical emergencies to head or face which allegedly led to deficient delay in detainee's medical care, and (2) detainee's complaint only discussed his own deficient treatment).

Furthermore, Johnson's allegations, themselves, demonstrate that when Perez learned of the delay (through Johnson's grievance), Perez investigated the matter and, one month later, Johnson had his C-PAP machine. Doc. 10 ¶¶ 12-15. These circumstances do not plausibly suggest that a final policymaker at Centurion approved an unconstitutional action.

In sum, Johnson fails to satisfy the second requirement of a *Monell* claim because his allegations, even viewed as a whole, do not allow the

Page 13 of 16

court to draw the reasonable inference that Centurion had a custom or policy that constituted deliberate indifference to Johnson's constitutional rights. *Twombly*, 550 U.S. at 555, 570; *see also Grider v. Cook*, 522 F. App'x 544, 547-48 (11th Cir. 2013) (dismissing claim against municipality because inmate "did not provide any specific facts about any policy or custom that resulted in his alleged constitutional deprivation"); *Est. of Hand by & through Hand v. Fla. Dep't of Corr.*, No. 21-11542, 2023 WL 119426, at *6 (11th Cir. Jan. 6, 2023) (dismissing claim against Centurion because plaintiff alleged only an isolated incident and alleged no pattern beyond conclusory statements about understaffing and failure to ensure access to recent medical records).

For this reason, Johnson's § 1983 action against Centurion should be dismissed.

C. **Johnson Does Not Allege Causation**

A final deficiency in Johnson's second amended complaint is that he provides nothing more than conclusory allegations regarding causation. Johnson alleges that Perez approved the C-PAP machine, the C-PAP machine promptly was ordered, and the machine was delayed due to a supply issue. Doc. 10 ¶ 15; Doc. 11 at 3 ("Record facts indicate

that Centurion had a medical supply issue as the cause of delay of Trametrich's C-PAP machine. The machine had been ordered sometime in April 2022, but had not arrived as ordered until sometime in April 2023."). These allegations do not raise a reasonable inference that the delay, even if unconstitutional, was caused by a Centurion policy or custom. *Twombly*, 550 U.S. at 555.

## V. CONCLUSION

Johnson's second amended complaint fails to state a plausible § 1983 claim against Centurion for violation of the Eighth Amendment. The undersigned previously outlined the elements of a *Monell* claim for Johnson, and explained why his allegations fell short. Doc. 6. Johnson twice has re-pleaded. *See* Doc. 7 (First Am. Compl.); Doc. 10 (Second Am. Compl.). Johnson still, however, fails to plead sufficient allegations to hold Centurion liable under § 1983 for the purported violation of Johnson's constitutional rights arising from the delay in the C-PAP machine.

Accordingly, the undersigned respectfully **RECOMMENDS** that:

1. This action be **DISMISSED** under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b), for failure to state a claim upon which relief may be granted.

2. The clerk of court be directed to enter judgment accordingly and close this case file.

At Panama City, Florida, this 31st day of October, 2024.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to make recommendations regarding dispositive matters.** *See* **28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the report and recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only. A party must serve a copy of any objections on all other parties. A party who fails to object to this report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**